May 6th, 1809. The opinion of a majority of the court, consisting of Grimke, Waties, Bay, Brevard, and Wilds, was de* livered by
Brevard, J.
After stating the circumstances of the case, a majority of the court, Grimke, Brevard, and Wilds, Justices, are of opinion that the plaintiff is legally entitled to recover. We are aware that cases may occur, in which great hardships may *311 result from a rigid adherence to a general rule of law ; and it is possible that this case may furnish an instance of that sort. But we do not feel ourselves authorized, on any occasion, to break through a settled rule of law, or exclude its operation, in order to accommodate a particular case, on account of any peculiar distress, or inconvenience, which it may involve. If this case, or any other, for reasons such as this, should be considered as an exception to the general rule, it is impossible to foresee, or foretell, all the evils it might give birth to. It would open a passage to a flood of exceptions, which would finally sweep away the very foundations of the rule itself. It seems to us better, therefore, to adhere steadily to the rule, than to run the risk of destroying, by attempting to improve it; and a public mischief ought rather to be avoided than private inconvenience, or particular injustice.
On the argument of this motion it was contended, that our statute law has taken away, or abridged, the powers of the Courls of Ordinary, as to the granting of administration, and the distribution of the estates of persons dying intestate. But I believe there is nothing in our acts of assembly, which can be fairly construed to necessitate, or warrant, the conclusion which has been drawn from this proposition, if even it were to be admitted. I believe that the legislature never intended that any person, entitled to claim a portion of an intestate’s estate,.under óur law of distribution, should be authorized to be his own carver; or that he should be allowed, under any circumstances, to take any part of the estate in any other way, than that which has been sanctioned by the rules of law, and the practice of our courts. I believe that the doctrine which has been contended for in behalf of the defendant, cannot be consider, ed as necessarily flowing from a just and sound construction of our laws ; and I am clearly of opinion, that it would not be wise policy to adopt it. Our statute law does, indeed, authorize the partition of personal, as well as real estate, by writ, issuing from the Courts of Common Pleas, or Courts of Equity. This is a very useful, and in some cases, a very necessary provision. It avoids the necessity of a sale of the effects in some cases, where it would be injurious to the interests of the parties concerned ; and it hastens a distribu, tion, in cases where the administrator may be negligent, or dilatory. But this provision does not at all oppugn, or interfere, with the rights of the Ordinary to grant administration, nor with the rights of the administrator in collecting the assets, and paying the debts. The jurisdiction of the Ordinary is concurrent with the courts of law, in the distribution of the estate among the relations of the dc- *312 ceased; except, that where the court grants partition, (ha Ordinary cannot interpose. If the authorities should come ini collfl‘cl;i the Ordinary’s power being inferior, must be suspends ed quoad hoc. In this conflict of jurisdiction no injury can possibly result. The rights of creditors cannot be impaired. The Ordinary is bound to secure the payment of all thO debts, and other necessary charges against the estate, as far forth as the assets will extend, before any distribution among the relations shall take place. The courts of law, and the Courts of Chancery, will never interfere with his right to do so, but will uphold him in the exercise of it. But at any rate, a person who may be entitled to all, or any part of an intestate’s estate, cannot, before partition, or distribution made, and before any administration, have an exclusive, or absolute right of property, in any specific thing be-longing to such estate, so as to entitle him to take the same into'1 possession, and apply it exclusively to his own use, or transfer the right of property and possession to another It is much better for the interests of all who may be concerned, that the deceased should have a legal representative, appointed by the Ordinary, who shall' give security for the faithful discharge of his trust, and who shall be answerable to the Ordinary for every neglect of duty, by which' the interest of any person concerned shall be prejudiced. It may serve to explain the point now under consideration, to inquire into' the origin of the powers and rights of an administrator. My inquiry into the subject shall be very short. Anciently, in Englands, the estates of persons dying intestate, were at the disposal' of the Bishop of the diocese, where the estate lay, who generally kept one third of it to himself, on-'pretence of dedicating it to pious uses for the salvation of the soul of the defunct. 2 BI. Com. 492.. Before that time the king, as the parens patria, and general trustee' of the kingdom, was entitled to the estate, to pay the debts, and1 make provision for the family of the deceased. To remedy this' grievance, the stat. 3 Ed. 1, c. 19, was enacted, which required the* Ordinary to pay the debts of the deceased. 2 Bl. Com. 495. 2' Woodd. 481. And afterwards, the stat. 31 Ed. 3, c. 11, was made, by which it is provided, that the Ordinary shall depute the" nearest of kin of the deceased to administer his goods; This last' statute is the source from which administrations are derived. From' this view of the subject, it is evident that, upon the death of an in. testate, in ancient times, the king, and afterwards the Bishop, was" entitled to the possession and disposal of his personal estate ; and1 that afterwards the appointment of administrators became common1 *313 In consequence of the stat. 31 Ed. 3, c. 11, and a subsequent Stat. til, M. 8, e, 5. Vid. 'í'oüer’s Law of Executors, 56. These statutes direct to whom administration shall be granted. But the ad. ministrator is only the agent, or officer of the Ordinary, to whom he is accountable for his trust-. At common law the Ordinary might repeal an administration at his pleasure. Toller, 91. Our law points out his duty in this respect, and confines his power within proper limits. The administrator stood in the place of the Ordinary, who represented the king-, who was the general trustee for the creditors and relations of the deceased'; and the king, as ■parens patrice, represented the person of the intestate. At this day the 'administrator represents the person of the intestate in relation to his personal estate ; which vests in him immediately on the grant of letters of administration, and such grant has relation to the time of the intestate’s death. See Com. Dig. Adm’on. B. 10, 11. Co. Litt. 209. An administrator is then to be considered as the deputy of file Ordinary, who is a public officer, entrusted with the care and management of intestate’s estate, for the benefit of the creditors, and widow, children, and next of kin of the deceased. He is to be regarded as a trustee, in whom the property of the intestate vests by operation of law, for the use of all those who may be legally entitled to the same ; and who is authorized to collect and dispose of the same according to law, in the payment of debts, and neces. sary expenses, and by distribution among those entitled to the surplus, in the due course of administration-. As the legal repre. sentative of the deceased, in regard to his personal estate, he has the same property in the goods of the intestate, as the intestate himself had when living, and the same remedies to recover them. See Plow. 525. Toller 101. 2 Bl. Com. 510. The legal estate vests in the administrator as trustee. The shares to which the wife, or children, or next of kin, of the intestate, may be entitled, do indeed vest immediately on his death, but not in possession. They vest in interest only, as a chose in action. 3 P. Wm.’s 49* Speight v. Meigs, in this court, April, 1805. They have no right of property, or right of possession, till after partition, or delivery by the administrator.
If this doctrine be sound, it follows that Margaret M’Grew had no right to intermeddle with, or dispose of the property in question ; and that the defendant could not derive any valid title from her, or right to retain the goods from the administrator of M’Lain*
But it has been contended, the plaintiff is not entitled to recover damages for the conversion of the offspring of the female slave, *314 and of the mare in question, because they were not in the possession of the intestate at the time of his death, either in deed, or in law.
The answer to this objection is, that, by our law, the brood, or offspring, of tame and domestic animals, is similar to the civil law, which declares that the issue shall follow the' condition of the mother, or dam. 2 HI. Com. 390. 3 Bac. Abr. 301. 1 Hayw. 234. Doma!. B. 1 Tit, 11. This law applies to the joung of slaves, because as-objects of property, they stand on the same footing as other animals, which are assets to be administered by the personal representativo of the deceased owner. If the defendant had, indeed, been the lawful temporary owner of the mother of the young negroes, and of the mare in question, there might be a doubt who should be entitled to young brought forth during the period of the lawful possession of the defendant. But as the defendant was a tortfeasor, and never had any lawful right of property, or possession, in the mothers of the young slaves and horses, he can have no more right, thau any more stranger, to claim the offspring and increase in question. It has, however, been urged that the administrator has no right to recover for their value, because he sues in right of the intestate, and the intestate never had any right which vested before his death. To this objection the answer is, that this increase, from the female slave and mare, is the product of the intestate’s personal estate, which, like the increase of any other stock belonging to the personal estate, are assets to which the administrator has a legal right. For chattels, which never were vested in the intestate in possession, may accrue to the administrator by remainder, or increase. The young of cattle, or the wool of sheep, produced after the testator’s death, shall be assets. Toll. 127, on Ex’rs. 83.
Upon the whole, it is the opinion of a majority of the court that the verdict is right, and ought not to be set aside. In this opinion, Wilds, J., concurred; and added several strong reasons to shew the danger of departing from the settled doctrine of law, in order to gratify a desire to do justice in a particular case, without, maturely considering what mischief and injustice may be thereby occasioned ; and whether the merits of the case has, from the manner in which the question is brought to the view of the court, been fairly understood, and the interests of all persons concerned therein, fully developed, and sufficiently explained.